**Jesse Edward HALL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45107.**

Court of Criminal Appeals of Texas.

Nov. 15, 1972.

Rehearing Denied Jan. 10, 1973.

Emmett Colvin, Jr., Don Metcalf, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for murder. The punishment was assessed at death.

■ Appellant contends that the evidence is insufficient to support the conviction.

Diane Phifer, Assistant Manager of a 7–11 Store on North Edgefield Street in Dallas, testified that between 7:00 P.M. and 7:30 P.M. on December 8, 1968, Officer Knight of the Dallas Police Department, armed with a shotgun, stationed himself in the back room of the store. Between 10:00 P.M. and 10:15 P.M., on that evening, a man entered the store and asked for "Kool" cigarettes. After Mrs. Phifer obtained the cigarettes for the man, he stated he needed some lunch meat and walked to a refrigerated unit and removed two packages of meat. The man then returned to the counter where Mrs. Phifer was located and laid a package of meat on each side of the cigarettes Mrs. Phifer had placed on the counter for him. When Mrs. Phifer raised up, after reaching under the counter for a sack, the man had a gun in his hand. The man said, "Put it all in there," whereupon Mrs. Phifer started removing money from the cash register and putting it into the sack. After the sack of money was "shoved" to the robber, Mrs. Phifer was told to go to the back room. After hearing Officer Knight say, "You don't want to do that," she heard a gunshot and Officer Knight fell to the floor with blood on his face. Officer Knight died as the result of a gunshot wound. Mrs. Phifer testified that she saw the man briefly but was unable to identify appellant as the robber. A high school student and her eight year old niece were in the store at the time of the shooting. They, too, were unable to identify appellant as the robber.

Officer Johnson of the Dallas Police Department testified that on December 12, 1968 he stopped a speeding car on Denton Drive and identified appellant as the person seated on the passenger side of the front seat. Appellant and the driver of the car, one Bill Courson, were taken to jail on "alias tickets." [1] A search of the car in which appellant was riding revealed only a whisky bottle and the vehicle was taken to the automobile pound.

On December 27, 1968, Dallas County Deputy Sheriff McCurley went to a motel on Harry Hines Boulevard to talk to Courson and after a conversation with Courson, McCurley searched the car in which Courson and appellant were arrested on December 12, 1968 and found a pistol under the front seat on the right-hand side of the car.

Officer Alexander of the City-County Investigation Laboratory, testified that the bullet removed from Officer Knight's body was fired from the gun found in Courson's car on December 27, 1968.

Officer Day of the Identification Bureau testified that fingerprints on the two packages of meat handled by the robber at the 7–11 Store, and a fingerprint on the gun which fired the fatal shot were the fingerprints of appellant.

Appellant cites us to Galvan v. State, Tex.Cr.App., 461 S.W.2d 396 and Grice v. State, 142 Tex.Cr.R. 4, 151 S.W.2d 211, for the proposition that when fingerprints are shown to have been left at the scene when the crime is committed, it is possible to exclude the hypothesis that the fingerprints might have been placed there innocently prior to or subsequent to the commission of the crime. Appellant argues that the instant case is unlike Galvan and Grice in that there is no evidence to exclude the hy-

1. Officer Galvan described alias tickets as being tickets for traffic offenses.

pothesis that appellant could have placed his prints upon the meat packages at a time prior to the entry of the robber at the store. Appellant further urges the absence of evidence as to when the print was placed upon the gun and concludes that there is a hypothesis of innocence buttressed by the inability of the people in the store to identify appellant.

Grice v. State, supra, and Galvan v. State, supra, are distinguishable from the instant case. In Grice, this Court held a fingerprint found on a portion of a door glass was sufficient to support a conviction where evidence was sufficient to show beyond a reasonable doubt that fingerprint was placed on glass by burglar at time of burglary. Unlike the instant case, there was only a fingerprint at the scene in Grice to link defendant with the crime. In the case before us the Court charged the jury on the law of circumstantial evidence. In Galvan, this Court held that a charge on circumstantial evidence was unnecessary where defendant's palm print was formed on the inside of prosecutrix's home where apparently defendant "had never been before or had a right to be." In addition to the Galvan and Grice cases, this Court has held many times that fingerprints alone may be sufficient to convict if the evidence shows that they must necessarily have been made at the time of the burglary. Bowen v. State, Tex.Cr.App., 460 S.W.2d 421; Dues v. State, Tex.Cr.App., 456 S.W.2d 116; Mann v. State, Tex.Cr.App., 420 S. W.2d 614; Rodriguez v. State, Tex.Cr. App., 419 S.W.2d 372; Caudillo v. State, 167 Tex.Cr.R. 390, 318 S.W.2d 891. Unlike the instant case, the only evidence linking defendants to the crime in the cited cases was the accused's fingerprint found at the scene. In the case before us, not only were appellant's fingerprints lifted from the packages of meat handled by the robber at the scene, but his fingerprint was found on the gun which fired the fatal shot.

Evidence of appellant having been in the car in which the death weapon was found at a date following the shooting, and the only identifiable prints on the meat packages belonging to appellant[2] are further factors which negate the hypothesis that appellant may have placed his fingerprints on the meat packages prior to the crime.

We find the evidence sufficient to sustain the conviction.

Due to the nature of appellant's remaining contentions, they will be grouped together for discussion. They are:

(1) The conviction is void in violation of appellant's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Texas for the reason that appellant was deprived, over objection, by the court of three jurors who said they could never vote for the death penalty in circumstantial evidence cases.

(2) The imposition of the death penalty was a violation of the appellant's right against the infliction of cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States. (Appellant urges other bases for holding the death penalty unconstitutional which we will not set out in view of our disposition of the case)

(3) The conviction is void in that the prosecutor, under Art. 1.14, Vernon's Ann.C.C.P., is authorized to decide who may be subject to the death penalty in Texas, without guide lines or restrictions.

■ The Supreme Court of the United States recently overruled the prior holdings of this and other courts in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346, and in Branch v. Texas, 408 U. S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, when

---

2. Officer Bass of the Identification Bureau testified that he lifted all of the fingerprints he could find on the meat packages and Officer Day identified the prints as belonging to appellant.

it held in effect that the death penalty may not be assessed under our present statute. The Honorable Preston Smith, Governor of Texas, by Proclamation dated August 9, 1972, has commuted the punishment in this cause from death to life imprisonment. Appellant contends that Whan v. State, 485 S.W.2d 275, (June 28, 1972), is not authority for commutation by the Governor in that the defendant in Whan had been formally sentenced after this Court had originally affirmed the case [3] and the Governor had a sentence to commute, while in the instant case no sentence having been imposed the Governor had nothing to commute. In Whan v. State, supra, this Court noted that the term *after conviction*, as used in Art. IV, Sec. 11, of the Texas Constitution, Vernon's Ann.St. and Art. 48.01, V.A.C.C.P., providing that the Governor shall have powers, *after conviction*, to grant commutations, has been construed to mean after verdict of guilty.[4] Antwine v. State, 578 S.W.2d 486 (October 18, 1972), following Whan v. State, supra, is contrary to appellant's contention that the Governor is without authority to commute the punishment before sentence is pronounced.

As a result of the Governor's commutation and the authority of Whan v. State, supra, the judgment of the trial court is ordered reformed to show the punishment to be assessed at life.

 Appellant relies on Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, in his contention that the court erred in excluding three jurors who said they could not vote for the death penalty

in a circumstantial evidence case. In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 the United States Supreme Court held the decision in Witherspoon was not applicable where the punishment assessed was life imprisonment. The punishment in the instant case having been commuted to life, appellant's contention is without merit. See Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed. 2d 706.

 The rationale of Bumper v. North Carolina, supra, dictates that nothing is presented for review under appellant's contention that the prosecutor, under Art. 1.-14, V.A.C.C.P.,[5] can arbitrarily determine who may and may not be subject to the death penalty.

The judgment, as reformed, is affirmed.

Opinion approved by the Court.

---

3. Whan v. State, Tex.Cr.App., 438 S.W. 2d 918.

4. Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162; Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585.

5. Art. 1.14, V.A.C.C.P., provides: "The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case in which the State has made known in open court

in writing at least 15 days prior to trial that it will seek the death penalty. No case in which the State seeks the death penalty shall be tried until 15 days after such notice is given. When the State makes known to the court in writing in open court that it will not seek the death penalty in a capital case, the defendant may enter a plea of guilty before the court and waive trial by jury as provided in Article 1.13, and in such case under no circumstances may the death penalty be imposed."