# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00618-CR

**Amado Perez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-09-301235, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The district court found appellant Amado Perez guilty of burglary of a habitation and sentenced him to three years in prison. *See* Tex. Penal Code Ann. § 30.02 (West 2003). The sole contention on appeal is that the evidence is legally insufficient to support the finding of guilt. We overrule this contention and affirm the conviction.

On November 25, 2008, Rolando Juarez returned to his apartment to find that the front door had been forced open and the interior ransacked. A paint sprayer, drill, video game system, and about two hundred quarters had been stolen from Juarez's bedroom. A stereo receiver had been moved from a cabinet in the living room to the coffee table. A crime scene specialist found and photographed a palm print in the dust on the top of the receiver. She also found and lifted two latent fingerprints on the metal surface of the receiver, one on the top and one on the bottom. These

prints are the only evidence linking appellant to the burglary. Appellant urges that the prints are legally insufficient to support the finding of guilt because they were not shown to be his.

The State's fingerprint expert was Toby Cross, a latent print examiner for the Austin Police Department. Cross identified three sets of prints. State's exhibit 25 contained the prints taken from the stereo receiver by the evidence technician. Cross said that when these prints were entered into the Automated Fingerprint Identification System (AFIS), "it came back as a hit and it made an identifying match to a viable candidate." The AFIS fingerprint card was introduced in evidence as State's exhibit 26. The card bears the name Amado Perez, and includes a Social Security number, birth date, and physical description, but there is no trial evidence that, aside from the name, this identifying information matches appellant.[1] Cross identified State's exhibit 27 as a set of fingerprints he personally took from appellant shortly before testifying.

The prosecutor questioned Cross regarding his examination of the three sets of prints:

Q: Mr. Cross, as defense counsel has just talked about [during voir dire], he alluded that you had checked fingerprints in this case—. And I'm assuming that's from State's Exhibit 25—

A: That's correct.

Q: —to those known to—that came from the defendant; is that correct?[2]

A: That's correct.

---

[1] We note, however, that the date of birth on exhibit 25 is the same birth date that appears on the warrant for appellant's arrest, the sheriff's return, and several indigence forms submitted for the appointment of counsel, all of which are in the clerk's record.

[2] From the context of the prosecutor's questioning as a whole, we infer that the "known prints" referred to in this and the following question were the AFIS prints.

. . .

Q: I believe you had said, in response to defense counsel's question, that there were at least eight points of comparison between the prints that you obtained as State's Exhibit 25 and those known prints of the defendant; is that correct?

A: That's correct

. . .

Q: Now, Mr. Cross, did you have an opportunity to obtain fingerprints from the defendant here today?

A: Yes, I did.

Q: And were you able to do a comparison between the prints that you obtained from the defendant and the prints that you had in this case?

A: From the prints from the defendant, this afternoon, to the actual latents here?

Q: Yes.

A: No, sir, I did not.

Q: Were you able to do a comparison between the prints that you compared the latents to with the AFIS?

A: Yes, I did.

Q: Okay. And what was the result?

A: My conclusion was that the—they are the defendant's, and they came back to be his right middle finger, twice, and his left palm print, twice.

. . .

Q: Okay. And are these 26 and—State's Exhibit 26 and 27, when you talked about doing a comparison today, are these the documents—the defendant's prints that you used to make a comparison?

A: Yes, they are.

3

Cross clearly stated that he did not compare the latent prints collected at the scene of the burglary to the prints he took from appellant on the day of trial. The rest of his testimony is less clear, but viewed in the light most favorable to the result, the trial court could have reasonably understood Cross to say that he had compared the AFIS prints to both the latent prints and the prints he took from appellant, and that in both cases they matched. Thus, in this indirect way, the prints found at the scene were shown to be appellant's.

When the evidence shows that fingerprints found at the scene of the crime were left there by the criminal at the time the crime was committed, thereby excluding the hypothesis that they were placed there innocently, and the evidence further shows that the fingerprints are identical to the accused's known prints, the evidence excludes every reasonable hypothesis save guilt of the accused. *Scott v. State*, 968 S.W.2d 574, 578 (Tex. App.—Austin 1998, pet. ref'd). Appellant's prints were found on the stereo receiver that had been moved during the burglary. The palm print was made in the dust on top of the receiver, suggesting that it was fresh. Juarez testified that he did not know appellant and had never given him permission to enter his residence. Viewing all the evidence in the light most favorable to the finding of guilt, the trial court could rationally conclude beyond a reasonable doubt that appellant was the person who burglarized Juarez's apartment. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency standard); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (same).

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   October 21, 2010

Do Not Publish