**Hector RIVERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–97–00525–CR.**

Court of Appeals of Texas, Austin.

April 15, 1999.

Keith S. Hampton, Austin, for Appellant.

Ronald Earle, Dist. Atty., Maura Phelan, Asst. Dist. Atty., Austin, for State.

Before Justices KIDD, B.A. SMITH and POWERS.*

MACK KIDD, Justice.

Appellant Hector Rivera appeals his conviction for murder. A jury found appellant guilty and the court assessed his punishment at twenty years' imprisonment. *See* Tex. Penal Code Ann. §§ 19.02(b)(1), 7.02(a)(2) (West 1994).[1]

Appellant presents two points of error. He contends that the evidence is legally insufficient to sustain his conviction as a party to murder. His second point complains of the trial court's overruling his motion for speedy trial based on the eighteen-year lapse between his indictment for the murder and his apprehension. We will affirm the judgment of conviction.

## Sufficiency of Evidence

◼ Appellant's first point of error challenges the legal sufficiency of the evidence to support his conviction for murder under the law of parties. The standard for reviewing legal sufficiency is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Crim.App.1981); *Scott v. State,* 968 S.W.2d 574, 575–76 (Tex.App.—Austin 1998, pet. ref'd). This standard of review is the same for both direct and circumstantial evidence. *See Geesa v. State,* 820 S.W.2d 154, 157–62 (Tex.Crim.App.1991).

Viewed in the light most favorable to the verdict, the evidence shows that about three o'clock in the morning of February 18, 1978, appellant, who went by the names of Hector Butler and Hector Vera, and his brother, Tito Butler, entered a crowded McDonald's restaurant in Austin. Tito was carrying a rifle, and appellant was carrying a knife he held down by his leg. They moved purposefully and directly, as if they had come in to do something. Tito approached Ricky Colunga who was standing at the counter with friends waiting to be served. Colunga's first thought was that the armed men had come to rob the restaurant. Colunga recognized appellant from work and knew the car in which they arrived belonged to Victor Estrada. Tito raised the rifle into shooting position and pointed it toward Colunga, but appellant said in Spanish that those were not the guys. Appellant then indicated a group of men at a table and said, "it's them over there," and the two armed men walked together to where Rudolpho Trevino was sitting with two other men. Tito was a little ahead of appellant. Tito, who only seconds before apparently did not even know what his intended victim looked like, put the gun to Trevino's chest and said something like, "I'm going to kill you." Trevino put his hand up toward the barrel of the gun, there was a brief struggle and then one shot was fired. The bullet went through Trevino's wrist and into his chest. Immediately after the shooting, appellant and Tito ran out of the restaurant. One of the men sitting at the victim's table, Able Buentello, gave chase. Appellant stabbed the pursuer in the back as soon as he came out the door, but even though Buentello was wounded, he still grabbed the gun from Tito. As Buentello struggled with Tito for the rifle, appellant stabbed him again, this time in the side. Appellant and Tito then escaped in an automobile driven by Victor Estrada, which was parked in front of the door as if to facilitate a quick

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The applicable statute for this 1978 offense is unchanged except for renumbering from § 19.02(a)(1) to 19.02(b)(1). The complicity statute is unchanged. We cite current law for convenience.

getaway. Trevino died at the scene. Buentello was hospitalized, but survived.

A few hours after the shooting occurred, an officer investigating the case identified and interviewed the driver, Estrada, who pointed out the apartment where he had taken the two brothers after the shooting. This officer and another working on the case went to the apartment and while they were talking to a man there, appellant and Tito arrived. The officers told appellant and Tito that they were from the homicide detail and that they were investigating the shooting that had occurred at McDonald's earlier that same day. The officers tried to get Tito and appellant to voluntarily come for an interview at the police department headquarters. The brothers were uncooperative, hostile, refused to be interviewed, and insisted on being permitted to leave. The officers did not believe that they had sufficient information to charge the brothers at that time and did not have a warrant for their arrest. A warrant issued shortly thereafter, but evidence at trial indicated that appellant left town soon after the killing. A warrant officer attempting to arrest appellant saw some women carrying men's clothes out of a house where appellant was suspected to live. None of the officer's efforts were successful in locating appellant. Rickie Colunga, who worked with appellant at a furniture factory and was at the scene of the shooting, testified that he never saw appellant after the shooting until the trial. Evidence at trial showed that appellant was arrested in New York under an assumed name in 1980. Over the next several years appellant was arrested and incarcerated in New York State on many occasions, used a large number of aliases and falsified his date of birth and other identifying facts on many occasions. There is no evidence that appellant ever again used any of the names he had used while in Texas. He was not found and arrested until eighteen years after the shooting. He was finally found when he was arrested in Dekalb County, Georgia. Law enforcement authorities there notified the Austin Police Department that the person for whom Austin police had obtained a warrant was there.

■ A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the primary or principal actor. See Goff v. State, 931 S.W.2d 537, 544 (Tex.Crim.App.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

■ In order to establish liability as a party, the State must show that, in addition to the illegal conduct by the primary actor, the accused harbored the specific intent to promote or assist the commission of the offense. See Lawton v. State, 913 S.W.2d 542, 555 (Tex.Crim.App.1995), cert. denied, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). The evidence must show that at the time of the commission of the offense, the parties were acting together, each doing some part of the execution of the common design. See Brooks v. State, 580 S.W.2d 825, 831 (Tex.Crim.App. 1979). The essential principle of parties' culpability is the common design to do a criminal act. Id.

■ While an agreement of the parties to act together in a common design seldom can be proved by direct evidence, reliance may be had on the action of the parties, showing by either direct or circumstantial evidence, an understanding and common design to do a certain act. See Burdine v. State, 719 S.W.2d 309, 315 (Tex.Crim.App.1986). In determining whether one participated as a party committing an offense, the fact finder may look to events occurring before, during and

after the offense and may place reliance on acts showing an understanding and common design to do a certain act. *Porter v. State,* 634 S.W.2d 846, 849 (Tex.Crim.App. 1982). Evidence is sufficient where an accused is present and encourages the commission of the offense by words or other agreement so long as the evidence shows that the parties were acting together. *Cabrera v. State,* 959 S.W.2d 692, 695 (Tex.App.—Dallas 1998, pet. ref'd). In a case where a defendant went with a companion to retaliate for being cheated in a drug transaction, the defendant killed one victim to prevent him from defending his mother, and another killed the mother. This was sufficient to show that defendant participated as a party in the death of the mother. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995). *See Garcia v. State,* 882 S.W.2d 856, 859–60 (Tex. App.—Corpus Christi 1994, no pet.) (finding sufficient evidence of complicity where defendant aided gang member by preventing a vehicle passenger from aiding other victims). If evidence shows the mere presence of an accused at the scene, or even his flight from the scene, without more, it is insufficient to sustain a conviction as a party to the offense. *Valdez v. State,* 623 S.W.2d 317, 321 (Tex.Crim.App. 1979). However, evidence is sufficient under the law of parties if it shows that the defendant was physically present at the commission of the offense and encouraged its commission by words or other agreement. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994) (opinion on reh'g), *cert. denied* 519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996).

■ Standing alone, proof that an accused assisted the primary actor in making his getaway is insufficient to support a conviction as a party even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. On the other hand, presence at or flight from the crime scene may combine with other facts to show that an accused was a participant and a party.

*Guillory v. State,* 877 S.W.2d 71, 74 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see Scott v. State,* 946 S.W.2d 166, 168 (Tex.App.—Austin 1997, pet. ref'd).

Applying the *Jackson* criteria to the facts of this case, we find that a rational trier of fact could have found beyond a reasonable doubt that Tito Butler intentionally and knowingly caused the death of Rudolpho Trevino by shooting him with a firearm, and that appellant acting as a party solicited, encouraged, directed, aided or attempted to aid Tito Butler in that action. The evidence supports a jury determination that appellant played a significant role as a party to the murder. He accompanied his brother in and out of the restaurant, and both were armed. He was the one who deflected Tito from pointing the firearm at the wrong man and directed him to the intended target; he walked with Tito to where the victim was sitting; and after the killing, facilitated their escape by stabbing a pursuer twice. The evidence also supports the reasonable inference that appellant immediately fled the jurisdiction in order to avoid prosecution. The jury could reasonably determine that appellant's conduct constituted encouragement, direction and aid in the murder. Appellant's first point of error is overruled.

### Speedy Trial

■ Appellant's second point of error contends that the trial court erred in overruling his motion to dismiss for lack of a speedy trial. A criminal defendant's right to a speedy trial is guaranteed by both the United States and Texas constitutions. U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Emery v. State,* 881 S.W.2d 702, 707 n. 8 (Tex.Crim.App.1994); *Deeb v. State,* 815 S.W.2d 692, 705 (Tex.Crim.App. 1991); *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim.App.1985). The federal constitutional right to a speedy trial is applicable to state prosecutions. *See Klopfer v.*

*North Carolina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Appellate review of a trial court's decision to grant or deny a speedy trial claim has two parts. We review the factual components for abuse of discretion and the legal components of the trial court's decision de novo. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim.App. 1999) (basing decision on standards set in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) and *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997)).

■■■ To determine whether the constitutional right to a speedy trial has been denied, the Supreme Court devised an analysis that has since been universally followed. *See Barker*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In conducting this review, we must balance four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *Johnson*, 954 S.W.2d at 771. No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation, and these factors "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

■■■ **Length of delay.** The length of delay for purposes of speedy trial analysis is generally measured from the time a defendant is arrested or formally charged. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim.App.1992). The offense in question occurred on February 18, 1978, and appellant was indicted on April 18, 1978. He was not committed to Travis County Jail for this offense until September 18, 1996. His trial began July 15, 1997, and he was convicted and sentenced on July 17, 1997. When post-accusation delay approaches one year, most courts have held it triggers the speedy trial inquiry. *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The State concedes in its brief that the eighteen-year period between indictment and trial is sufficient to raise presumptive prejudice as defined .in *Doggett.* However, the State points out that there is no certain length of time that automatically violates the speedy trial guarantee so as to avoid the *Barker* analysis. *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985). Once a presumption of prejudice is raised, the burden of excusing the delay rests with the State. *State v. Perkins*, 911 S.W.2d 548, 552 (Tex. App.—Fort Worth 1995 no pet.).

■■■ **Reason for the delay.** The State bears the burden of justifying the trial delay, and if the record is silent or the reasons given are insufficient to excuse the delay, the appellate court must presume that no valid reason for delay existed. *Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App.1983); *Turner v. State*, 545 S.W.2d 133, 137 (Tex.Crim.App.1976). In considering the reason for the delay, different weight should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense would weigh heavily against the State. There is no evidence suggesting that the State's failure to capture appellant was deliberate or intentional. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the State rather than the defendant. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Strunk v. United States*, 412 U.S. 434, 435, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Turner*, 545 S.W.2d at 137.

The State's view of the reason for the delay, and the trial court's apparent reason for denying the motion, is that the police made sufficient efforts to apprehend appellant and exercised reasonable and necessary diligence in doing so, but were frustrated by appellant's flight outside the state and his continued actions to elude

apprehension including changing his name, birth date, and social security number. On the other hand, appellant argues that even though the trial court apparently was convinced that the State's meager efforts to locate appellant and to serve the arrest warrant were sufficient, the delay was entirely the State's fault and he bears no blame for the delay. Appellant asserts that nothing in the record shows that he was, or even could have been, informed that he might be a suspect in the murder. Appellant's position is that the State was negligent in not discovering where he was and failing to serve him with the outstanding arrest warrant. Appellant does not address his role in avoiding apprehension by his frequent changes of name and identifying numbers.

Appellant's position is disingenuous at best. The record shows that the investigating officers spoke to appellant only a few hours after the murder, told him they were investigating the murder that occurred at McDonald's that day, and invited appellant and his brother to the police station to give a statement. Both refused and were belligerent toward the officers. Shortly thereafter, and after an arrest warrant was issued, another officer looking for appellant saw two women carrying a large quantity of men's clothes out of one of appellant's three addresses under surveillance. The officer believed the house was appellant's, but did not see him. Ricky Colunga, who worked with appellant, never saw him again. No evidence showed that anyone saw appellant in Texas after these events, despite the search by Austin police, and the warrant entered in the Texas Criminal Information Center and the National Criminal Information Center.

Evidence at the pretrial hearing on appellant's motion to dismiss showed that after the murder appellant accumulated an extensive criminal history record in New York State. It also showed that appellant never again used either of the names by which he had been known in Austin, Hec-

tor Butler and Hector Vera. The evidence showed that in New York, appellant had used at least five other names, at least five different dates of birth, and five different social security numbers. Appellant had also given different places of birth, including New York and Puerto Rico.

■ Delay which is attributable *in whole or in part* to the defendant may constitute a waiver of a speedy trial claim. *Munoz,* 991 S.W.2d at 822 (citing *Barker,* 407 U.S. at 529, 92 S.Ct. 2182 (delay attributable to defendant constitutes waiver of speedy trial)); *Dickey v. Florida,* 398 U.S. 30, 48, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility"). *See Lott v. State,* 951 S.W.2d 489, 494–95 (Tex. App.—El Paso 1997, pet. ref'd) (State's failure to locate defendant for twenty years "stemmed not from a lack of diligence, but from Lott's own crafty, and successful, twenty-year-old disappearing act.... Since the delay is due largely to Lott's actions, this factor [reason for delay] does not weigh heavily against the State."); *Burgett v. State,* 865 S.W.2d 594, 597 (Tex.App.—Fort Worth 1993, pet. ref'd) ("Delay caused by acts of the accused which are beyond the control of the prosecution should not weigh against the State."). We find that appellant's hasty disappearance from Austin, coupled with his frequent name and identifying numbers changes while in another jurisdiction, establishes that the Austin police department's failure to apprehend him was in large part due to his actions, and therefore this factor does not weigh against the State.

■ **Assertion of the right to speedy trial.** We must consider appellant's responsibility to assert his right to a speedy trial. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. Appellant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he was deprived of that right. *Id.* at 531–32,

92 S.Ct. 2182. Conversely, a failure to assert the right in a timely and persistent manner indicates that he did not really want a speedy trial. *Emery,* 881 S.W.2d at 709; *Harris v. State,* 827 S.W.2d 949, 957 (Tex.Crim.App.1992); *see Barker,* 407 U.S. at 534–36, 92 S.Ct. 2182. In such a case, this factor must be weighed against the defendant. *See Sinclair v. State,* 894 S.W.2d 437, 440 (Tex.App.—Austin 1995, no pet.).

■ Appellant's counsel filed a motion to dismiss for lack of speedy trial on October 7, 1996, shortly after appellant was arrested, returned to Texas from Georgia, and appointed an attorney. Hearings were held on the motion December 3, 1996 and January 31, 1997. Appellant's motion did not actually request that he be given a speedy trial, but requested that the cause be dismissed because of the length of time between the event and indictment and his arrest. We find no direct demand for a speedy trial in the record. Although a motion to dismiss may notify the State and the court of a speedy trial claim, a defendant's motivation in asking for dismissal rather than for speedy trial is relevant and may attenuate the strength of the speedy trial claim. *See Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App.1983) (citing *McCarty v. State,* 498 S.W.2d 212, 215–16 (Tex.Crim.App.1973)); *Crowder v. State,* 812 S.W.2d 63, 67 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Our review shows that appellant's primary objective was not to gain a speedy trial, but was instead an attempt to have the charge against him dismissed. This weighs against appellant.

■ **Prejudice to defense.** The prejudice factor should be assessed in light of a defendant's interests that the speedy trial right was designed to protect. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182; *Emery,* 881 S.W.2d at 709. The Supreme Court has identified three such interests. They are: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused resulting from

the pending charges, and (3) to limit the possibility that the defendant's defense will be impaired. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182; *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Phillips,* 650 S.W.2d at 404; *Sinclair,* 894 S.W.2d at 440. Nothing in the record supports an argument that the first two interests are at issue in appellant's case. While appellant's frequent changes of name and other identifiers might possibly indicate appellant's anxiety and concern about getting caught and prosecuted, there is no testimony as to appellant's state of mind during the time in question.

■ The most important interest is that of possible impairment of the defense, because of the accused's inability to adequately prepare skews the fairness of the entire system. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182. If witnesses die or disappear during a delay, the prejudice is obvious; there is also prejudice if defense witnesses are unable to recall accurately events of the distant past, and loss of memory is not always reflected in the record. *See id.* A defendant has the initial burden of showing that he was prejudiced by trial delay. *See Emery,* 881 S.W.2d at 709; *Harris v. State,* 489 S.W.2d 303, 308 (Tex.Crim.App.1973).

Appellant's brief contends that his defense was impaired because during the eighteen years between the shooting and the trial, his brother Tito Butler, the driver of the car, and Sergeant Beck, the supervisor of the investigators, had all died. Appellant contends that the delay impaired his ability to identify and interview people who were in the crowded restaurant the night of the shooting but who were not identified at the time. He also contends that the memories of some of those who did testify were seriously dimmed by time. He cites the testimony of Ray Lopez as being hampered by memory loss. Despite the passage of time, Lopez remembered a great deal about the event. Lopez testified that he was sitting

at the table with Able Buentello and Rudolpho Trevino, the victim. Two men came to their table, one pointed the gun at Trevino and told him he was going to shoot him, the men struggled, the man with the gun shot Trevino, who did not reach for a gun, Buentello chased after the men and grabbed the gun away, and the second man who came into McDonald's stabbed Buentello, and then the shooter and stabber left in a waiting car together. Appellant does not point to anything in the record to show what other specific information Lopez, or anyone else, would have given that would have contributed to his defense.

Appellant's brief states that instructions on self-defense, provoking the difficulty and the right to arm oneself at the scene of the difficulty, were requested and then acknowledges: "However, these defensive instructions were denied because those defensive issues were not raised by the evidence." We agree that there was no evidence on these issues. Furthermore, there is no evidence in the record, particularly in the hearings on the motion to dismiss, that suggest what defense might have been presented if the dead and forgetful witnesses had been available to testify. The unavailability of some witnesses and forgetfulness of others could, of course, benefit appellant by weakening the State's case. Time can damage either side's case, and it is often impossible to determine which side has been prejudiced more severely. See *Doggett*, 505 U.S. at 655–56, 112 S.Ct. 2686.

■ Although appellant is not required to make a showing of actual prejudice, the burden is on him to make some showing of prejudice caused by the delay of his trial. *Courtney v. State*, 472 S.W.2d 151, 154 (Tex.Crim.App.1971). Appellant must make some showing of potential prejudice resulting from the delay. *Chapman v. Evans*, 744 S.W.2d 133, 137 (Tex.Crim. App.1988). In *Phillips v. State*, 650 S.W.2d 396 (Tex.Crim.App.1983), the Court of Criminal Appeals said that it is

not necessary for a defendant to show that the testimony of a missing witness would have been favorable to the defense, but just that it would have been relevant and material. *Id.* at 403. In *Phillips*, the court noted that the defendant "through no fault of his own" was unable to talk to a co-defendant because he died before defendant learned of the indictment, and that it would impose an impossible burden to require a showing that unknown testimony would have been favorable to the defense. *Id.* at 402. In the instant case, appellant bears more than partial responsibility for the delay. Also, he made no effort at the hearing to show what the likely testimony of the deceased driver would have been. Estrada's written statement to the police was made known to appellant's counsel. However, appellant made no attempt to use it to show how the missing witness might have been relevant to appellant's defense.

■ In conclusion, although eighteen years between the indictment and trial clearly raises serious questions about how the delay might have affected memories or availability of witnesses to *both* appellant and the State, an analysis of the relevant factors does not operate in appellant's favor. The reasons for the delay can be attributed in significant part to appellant's success in avoiding apprehension by leaving the jurisdiction and changing his name and other identifiers during the intervening years. It is easy for appellant to criticize the police department's efforts to find him and to speculate on what they might have done to locate him in other states under various aliases. However, there is nothing in this record suggesting that the information on appellant's whereabouts was lying neglected in a law enforcement file for lack of interest. Some courts of appeals' cases illustrate the distinction in appellant's responsibility and that of the State. In *Lott v. State*, 951 S.W.2d 489 (Tex.App.—El Paso 1997, pet. ref'd), the defendant was a fugitive for over thirty years. He had moved, changed

his name, did not use any of his prior identifying numbers, had no driver's license, his employer paid him as contract labor and cashed his checks for him, and the police department finally concluded after many searches over several years that he must have died. The defendant was finally located in New Orleans where he used his own name to get health care through the Veterans' Administration. The court held that the defendant was himself responsible for the delay and that the prejudice to his defense was self-inflicted. *See also Burgett v. State*, 865 S.W.2d 594 (Tex.App.—Fort Worth 1993, pet. ref'd) (motion for speedy trial denied despite five-year delay where appellant left jurisdiction, lived under assumed name and had resumed trade in amphetamines). These cases should be compared with *Branscum v. State*, 750 S.W.2d 892 (Tex. App.—Amarillo 1988, no pet.). In 1964, Branscum murdered his wife and shot himself. He was not tried until twenty-two years later. The defendant had been in hospitals and a rehabilitation center for substantial lengths for time, and resided in Oklahoma with his children after recovery. The court determined that the delay resulted solely from the State's failure to monitor his circumstances. Information about his status was readily available with minimal inquiry from the outset, and the State could have pursued the prosecution upon defendant's recovery. The court reversed his conviction and ordered the prosecution dismissed. *See also Pierce v. State*, 921 S.W.2d 291 (Tex.App.—Corpus Christi 1996, no pet.) (Nueces County prosecution found negligent because trial was over six years after offense; prosecution had defendant's correct address in Houston but made no attempts to locate him; arrest warrant with correct Houston address was never served; defendant was stopped twice in Houston for traffic offenses after arrest warrant issued; and defendant renewed his driver's license in Houston, but was never arrested). The instant case is more like *Lott* and *Burgett*, where the defendant actively avoided ap-

prehension, than *Branscum* and *Pierce*, where the State could have located the defendant with reasonable effort. Applying the balancing test set out above, we conclude that appellant was not denied his right to a speedy trial. Appellant's second point of error is overruled.

### Conclusion

Having overruled appellant's two points of error, we affirm the conviction.