TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00823-CR






Christopher Faz, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0983714, HONORABLE BOB PERKINS, JUDGE PRESIDING 







 After a jury trial, appellant Christopher Faz was convicted of murder and sentenced
to eighteen years in the Texas Department of Criminal Justice--Institutional Division. Tex. Penal
Code Ann. § 19.02 (West 1994). In three points of error, Faz challenges the legal and factual
sufficiency of the evidence to support his conviction and challenges the omission of a jury
instruction at the punishment phase of trial. We will affirm the district-court judgment.


Factual and Procedural Background



 The events of March 25, 1998, that culminated in the murder of Adam Chapa began
with a fight between John Paul Vasquez and Froilan Gaspar. While intervening to break up the
fight, Carl Chapa, Adam's brother, struck Vasquez. Participants in the fight scattered. Faz's
involvement in the chain of events began with a phone call from Vasquez to Faz's friend Eric
Machado while Faz and Machado were on their way to an auto parts store after work. According
to Faz, Machado said that Vasquez was loud, saying "stupid things" and being rude so Machado
hung up. Vasquez called again while Machado was in the store. Machado left the store without
completing his purchase, returned to the car, and told Faz they were going to pick up Vasquez at
Vasquez's uncle's house. On the way to pick up Vasquez, Machado and Faz stopped at
Machado's house where Faz retrieved a handgun belonging to Machado. On cross-examination,
Faz agreed that, although Machado sometimes carried the gun to try to sell it and sometimes for
general "protection," on the day in question Machado just asked Faz to get the gun. Machado told
him that Vasquez had "been jumped."

 The two picked up Vasquez at his uncle's house on East Second Street. As Vasquez 
got into the backseat, he noticed three men crossing the street. Vasquez stood and stuck his head
out the sunroof of the car. He hollered obscenities at the three, who were apparently the men
involved in the earlier fight. Vasquez invited them to fight because it was now three on three. 
Machado started driving off.

 As they approached the intersection of Aransas and Second, Vasquez saw a light
blue truck being driven by Carl Chapa coming to a stop in front of the Chapa house. Vasquez
jumped from the moving car and ran to Carl Chapa's truck. Carl attempted to move away in
reverse, but Vasquez began to attack him through the open window. As Carl was fighting with
Vasquez, Carl's brothers Adam and Marcos came to his aid and started hitting Vasquez. Adam
Chapa was a large man, about six feet six inches tall and weighing three hundred pounds.

 According to Faz, he ran back toward the fight to help Vasquez, but upon seeing
the size of the Chapa brothers, he ran back to the car and retrieved the gun. Faz took a step or
two, then fired in the air. Adam Chapa backed away, raised his hands in the air, and yelled at Faz
to put the gun away. Faz yelled back that he would put it away, "if you just tell your homeboys
to get off mine, you know, and that'll be it." At some point after the first shot, Machado drove
away.

 According to Faz, at this point, Vasquez started to run away with Marcos, the third
Chapa brother, and Carl Chapa in pursuit. Vasquez attempted to jump a fence enclosing a yard,
and either tripped or was pulled at and fell over the fence. The two pursuers also jumped the
fence and the fight continued. Faz shot in the air again. Vasquez's two pursuers jumped back
over the fence and began running away through an alley. Vasquez also jumped back over the
fence and came running toward Faz, yelling at Faz to give him the gun. According to Faz, he told
Vasquez, "No, the cops are coming," because he could hear multiple sirens in the area. Faz said
he told Vasquez that he could "take care of your business some other time." Vasquez grabbed the
gun and Faz ran off. Faz heard shots, saw Adam Chapa falling, and continued running. Vasquez
later caught up with him.

 According to Carl Chapa, his brother hit Vasquez, Vasquez got up, and looked like
he wanted to fight. Vasquez started yelling to "cap the m-f-." At that point, Carl noticed someone
wearing a red shirt and cap get out of the car with a gun and shoot a round in the air. Vasquez
started running away. According to Carl, he grabbed Adam and they were running, but not in
pursuit of Vasquez, who had already run away and had apparently jumped the fence. Vasquez
kept yelling, "Cap him." At this point, the man in the red shirt shot in the air again. According
to Carl, the man in the red shirt then pointed the gun in Adam's direction and shot. Carl realized
that Adam had been hit. Carl said that he never chased Vasquez and never tried to keep him from
going over the fence. From the moment the first shot was fired, his attention was on the man in
the red shirt with the gun.

 Marcos Chapa also testified. He saw Adam fighting with the man who was at
Carl's truck fighting with Carl. The man fighting with Carl started running and Marcos threw a
videocassette tape at him. The person kept running and jumped the fence; Carl and Adam were
behind him. Marcos then heard a shot. Neither Carl nor Adam jumped over the fence after
Vasquez. They started running away from the fence. After Marcos heard the shot, he ran toward
the front door of his mother's house, shouting at her to call the police because a guy had a gun. 
He saw the second shot; i.e., saw the hand in the air with the gun. He heard his brother Adam
yelling that he was unarmed; heard the other guy yelling, "Cap him." He said that the person
shooting in the air then lowered his hand and shot at Adam.

 Delores Chapa, Adam's mother, was watching television, when Christine, Adam's
wife, shouted for her to come stop them, they were fighting. She went on her porch, and heard
Carl and Marcos telling Adam to stay down because "he's got a gun." She kept hearing someone
in the background hollering, "Cap him." She then saw a man with a cap on raise the gun in the
air, shoot one time, and then lower the gun and shoot her son Adam.(1)

 After the shooting, Faz and Vasquez ran on foot to the home of Steven Guerrerro,
a friend of appellant's whose younger brother, Sammy, let them in. Sammy testified that Faz and
Vasquez told him that Vasquez shot someone; Vasquez mimicked firing the gun with his finger. 
Faz asked for a shirt to change into. When Steven arrived, he drove Faz and Vasquez to the home
of Roy Machado, Eric Machado's brother, who was having a birthday party. Roy called the
police; appellant voluntarily went to the police station and gave a witness statement.(2)

 In general, the witnesses agreed it was fairly dark with some light from a
streetlight. There was a great deal of confusion about what Faz, Vasquez, and perhaps Machado
were wearing. Several witnesses testified that Vasquez was a known hothead and troublemaker.


Legal and Factual Sufficiency of the Evidence



 In his first two points of error, Faz challenges the legal and factual sufficiency of
the evidence to support his conviction as a party to the offense of murder. The charge submitted
allowed Faz to be convicted as a party or as a principal. At the outset we note that the verdict
form created some confusion for the jury; in fact, they sent a note to the judge telling him they
wanted to convict Faz as a party but were not sure how to fill out the form. They found Faz
guilty; then "further" found him guilty as a party and found that he did not use a deadly weapon,
but knew that one would be used. Based on this verdict, we conclude that the jury found Faz
guilty as a party, but did not believe that the evidence established beyond a reasonable doubt that
Faz actually pulled the trigger. Accordingly, in our analysis of the sufficiency of the evidence,
we will not rely on testimony that, if believed, would have been sufficient to convict Faz as a
principal. However, that the jury did not believe beyond a reasonable doubt that Faz was the
shooter does not mean that the jury accepted all of Faz's version of events.


Legal Sufficiency


 When the court reviews the legal sufficiency of a verdict, it does so in the light
most favorable to the verdict to determine whether a rational finder of fact could have found all
the elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999). If there is
evidence that establishes guilt beyond a reasonable doubt and if the factfinder believes the
evidence, the reviewing court is not in a position to reverse the judgment on sufficiency of the
evidence grounds. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury
as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the
witnesses, and to determine the weight to be given any particular evidence. See Jones, 944
S.W.2d at 647; Moreno, 755 S.W.2d at 867. The court's duty is not to reweigh the evidence from
reading a cold record but to position itself as a final due process safeguard ensuring only the
rationality of the factfinder. Matamoros v. State, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995);
Moreno, 755 S.W.2d at 867.

Factual Sufficiency

 When the court reviews the factual sufficiency of the evidence, it considers all the
evidence in a neutral light and reverses if the verdict is so contrary to the overwhelming weight
of the evidence as to be unjust. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). The jury's verdict, however, should still be accorded due
deference so that the reviewing court does not, in effect, become the thirteenth juror. See Clewis,
922 S.W.2d at 133. The appellate court does not interfere with the jury's resolution of conflicts
in the evidence or pass on the weight or credibility of testimony. Unless the record clearly reveals
that a different result was appropriate, an appellate court should defer to the jury's determination
concerning the weight to give contradictory testimonial evidence because the jurors' resolution of
such conflicts often turns on an evaluation of credibility and demeanor by the jury. See Johnson,
23 S.W.3d at 8.


Law of Parties


 In order to prove Faz guilty as a party to an offense, the State had to prove that the
offense was committed and that the defendant, with the intent to promote or assist the commission
of the offense, solicited, encouraged, directed, aided, or attempted to aid the person who
committed the offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). In determining whether
the accused participated as a party, the court may look to events occurring before, during and after
the commission of the offense, and may rely on actions of the defendant which show an
understanding and common design to do the prohibited act. Ransom v. State, 920 S.W.2d 288, 
302 (Tex. Crim. App. 1994); Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App.1986);
Rivera v. State, 990 S.W.2d 882, 887-88 (Tex. App.--Austin 1999, pet. ref'd), cert. denied, 120
S. Ct. 1191 (2000). The evidence must show that at the time of the offense, the parties were
acting together, each contributing some part toward the execution of their common purpose. 
Burdine, 719 S.W.2d at 315. Circumstantial evidence may be used to prove party status. 
Ransom, 920 S.W.2d at 302 (Tex. Crim. App. 1994); Cordova v. State, 698 S.W.2d 107, 111
(Tex. Crim. App. 1988); Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987);
Rivera, 990 S.W.2d at 887.

 Evidence is sufficient to convict under the law of parties if the defendant is
physically present at the commission of the offense and encourages its commission by words or
other agreement. Ransom, 920 S.W.2d at 302; Cordova, 698 S.W.2d at 111; Rivera, 990 S.W.2d
at 888. In determining the sufficiency of the evidence to show an appellant's intent, and faced
with a record that supports conflicting inferences, we must presume--even if it does not
affirmatively appear in the record--that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution. Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App.1991); Farris v. State, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990).


Faz's Guilt as a Party

 Faz's analysis of the sufficiency of the evidence freeze-frames the action on one
moment during the course of events--the transfer of the gun from Faz to Vasquez. If Vasquez took
the gun away from him, Faz argues, his status is essentially that of a bystander with no criminal
culpability. Faz relies on Scott v. State, 946 S.W.2d 166, 167 (Tex. App.--Austin 1997, pet.
ref'd), in which this Court reversed a conviction as a party to aggravated robbery. However, Scott
is distinguishable from the current case. In Scott, the evidence showed that the defendant was
driving a car with several passengers, one of whom had a gun. Id. at 168. The defendant was
asked to pull over and park behind some apartments while two of the passengers went into a store. 
The defendant remained in the car listening to music. Id. The two passengers returned to the car,
got in and told the driver to go. While he was driving away, the others told him that there had
been a robbery and shooting and gave defendant one hundred dollars. Id. at 168-69. The court
instructed the jury that before the jury could find the appellant guilty it must find beyond a
reasonable doubt that appellant entered into an agreement and a conspiracy with the codefendants
to commit the offense of robbery. This Court held the evidence insufficient to convict Scott as a
party under that charge because there was no evidence that the defendant entered into a conspiracy
and agreed to become a party to the robbery by acting as a lookout and driver. Id. at 170.

 In the current case, the jury was instructed that Faz was criminally responsible as
a party if, with the intent of promoting or assisting the commission of the offense, he aided or
attempted to aid another person in the commission of the offense. Instructions and definitions on
murder and intent were also given. The evidence from which the jury could infer Faz's status as
a party was much more extensive than in Scott.

 Faz argues that, at the time he retrieved the gun, he did not know of the earlier fight
involving Vasquez. Therefore, he argues, he could not have formed any intent to harm anyone
or assist in harming anyone at the time he retrieved the gun. However, Faz contradicted himself
in front of the jury on cross-examination when he said that he knew of the attack on Vasquez at
the time and that sometimes he and Machado carried the gun for "protection." By the time he got
out of the car with the gun in hand, he knew of the earlier altercation and he had already decided
it was unwise to confront the Chapa brothers without the gun. The jury could have concluded that
at the time Faz retrieved the gun, he might not have already intended to harm Adam Chapa, but
was prepared to use the gun in connection with the attack on Vasquez.

 The jury did not have to accept Faz's benign characterization of the other actions
he admittedly took; they were free to derive another meaning from the totality of his actions. The
actions that the jury had before it to analyze were that Faz ran toward the fight scene, decided that
the Chapa brothers were too physically intimidating, went back to the car, retrieved the gun, fired
once in the air, then fired a second time. The jury may have believed the version of events given
in which Vasquez had already run away, jumped a fence, and eluded any pursuit by the time of
the second shot. There was conflicting and confusing testimony about who moved where and
when in relationship to each other, but the jury could have interpreted the participants' movements
as Faz moving toward Vasquez when Vasquez jumped back over the fence in order to make the
gun available to Vasquez. The jury did not have to believe that Faz verbally refused to give
Vasquez the gun and Vasquez took it away from him. Further, the jury could have viewed Faz's
change in shirts immediately after the event as an attempt to confuse identification.

 Finally, we note that both the State and the defense seem to assume that the
determinatve factor in the analysis of Faz's status as a party is whether Vasquez took the gun out
of Faz's hand. However, this Court's precedent undercuts an analysis focused only on the transfer
of possession of the gun. Rivera v. State, 990 S.W.2d 882 (Tex. App.--Austin 1999, pet. ref'd),
cert. denied, 120 S. Ct. 1191 (2000). In Rivera, the defendant and his brother Tito went into a
McDonald's. They were described as moving purposefully and directly. Id. at 886. Tito carried
a rifle, the defendant carried a knife. Tito raised the rifle and pointed it at one of the patrons. The
defendant redirected Tito by indicating another group of men. Tito shot the victim. As they left,
one man pursued them. The defendant stabbed the pursuer. Id. That evidence was held sufficient
to convict the defendant as a party. Id. at 888. The defendant did not directly supply the weapon
in Rivera; his identification of the intended victim and other actions allowed the inference that he
and Tito were acting with a common purpose. See also Garcia v. State, 882 S.W.2d 856, 859-60
(Tex. App.--Corpus Christi 1994, no pet.) (sufficient evidence of complicity when defendant aided
gang member by preventing a vehicle passenger from aiding other victims). 

 In the current case, the jury had a variety of evidence before it concerning actions
by Faz from which an inference of intent to assist Vasquez in the commission of the offense could
have been derived. It was not necessary that Faz actually pull the trigger to be convicted as a
party. We hold that legally and factually sufficient evidence supports the verdict and overrule
points of error one and two.


Punishment Phase Instruction



 In point of error three, Faz contends that the court erred in declining to give a jury
instruction on "sudden passion." At the punishment phase, a defendant found guilty of murder
may raise the mitigating issue whether he acted under the immediate influence of sudden passion
arising from an adequate cause. Tex. Penal Code Ann. § 19.02(d) (West 1994). The statute
defines "adequate cause" as "cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection." Tex. Penal Code Ann. § 19.02(a)(1) (West 1994). "Sudden passion" is defined
as "passion directly caused by and arising out of provocation by the individual killed or another
acting with the person killed which passion arises at the time of the offense and is not solely the
result of former provocation." Id. § (a)(2). If a defendant proves by a preponderance of the
evidence that he acted under the influence of sudden passion, the offense is punished only as a
second-degree felony.

 Faz produced no evidence of sudden passion. He was in no way threatened or
menaced by Adam Chapa or his brothers. He went toward the fight voluntarily, gun in hand, to
assist his friend. There is no evidence that any of the Chapas were armed with guns or knives. 
Although, in Faz's version of events, Vasquez was getting the worst of the fight at the time Faz
intervened, there was no evidence that he was in any immediate danger of being beaten to death. 
Faz testified that he could hear multiple sirens and his advice to run meant he believed that the
police would arrive quickly. Further, the jury also had testimony that indicated that although
Vasquez had been pulled away from Carl and knocked down, he was back up and seemed ready
to fight before running away. The trial court did not err in refusing to give the requested
instruction. We overrule the third point of error.





Conclusion



 We have considered and overruled appellant's three points of error. Accordingly,
we affirm the district-court judgment of conviction.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish
















* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Carl, Marcos, and Delores Chapa all testified that the same person who fired in the air then
lowered the pistol and shot Adam. However, by convicting Faz as a party and finding that he did
not use a deadly weapon, the jury evidently believed that Vasquez was the person who actually
pulled the trigger.
2. Faz was not arrested at the time. Hector Reveles, the detective on the scene who
accompanied Faz, testified that he did not consider Faz either a principal or party to the offense. 
The case was later presented to a grand jury, which indicted Faz. Vasquez fled town the day after
the murder. He was later arrested in San Antonio and tried and convicted separately.


 supply the weapon
in Rivera; his identification of the intended victim and other actions allowed the inference that he
and Tito were acting with a common purpose. See also Garcia v. State, 882