TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00207-CR




Daniel Ray Mendez, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT
NO. 2001-114, HONORABLE DON B. MORGAN, JUDGE PRESIDING




O P I N I O N
 
A jury found appellant Daniel Ray Mendez guilty of aggravated assault and assessed
punishment, enhanced by a previous felony conviction, at imprisonment for twenty years. See Tex.
Pen. Code Ann. § 22.02 (West Supp. 2005). Mendez contends that he was denied his right to a
speedy trial, his retrial following an earlier mistrial constituted double jeopardy, and his punishment
was unlawfully enhanced. We will remand for a new punishment hearing.
 
Speedy Trial
In point of error four, Mendez contends that the trial court should have granted his
motion to dismiss for want of a speedy trial. See U.S. Const. amends. VI, XIV; Tex. Const. art. I,
§ 10; Barker v. Wingo, 407 U.S. 514 (1972); Hull v. State, 699 S.W.2d 220, 221 (Tex. Crim. App.
1986). Appellate review of a trial court’s decision to grant or deny a speedy trial claim is conducted
de novo. Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). In conducting this review,
we balance four factors: length of delay, reason for delay, assertion of the right, and prejudice to the
accused. Barker, 407 S.W.2d at 530; Johnson, 954 S.W.2d at 771. 

Length of delay
The length of delay is measured from the date the defendant was arrested or formally
charged. Rivera v. State, 990 S.W.2d 882, 889 (Tex. App.—Austin 1999, pet. ref’d). Mendez was
arrested on March 6, 2001, and he was indicted two months later. He has been in continuous custody
since his arrest. Mendez’s motion to dismiss for want of a speedy trial was overruled on February
20, 2003. His first trial began on February 24 and ended in a mistrial two days later. The second
trial, which resulted in this conviction, began on May 19, 2003.
As the State concedes, the twenty-three-month delay in this cause is sufficient to
trigger a full Barker analysis. See Doggett v. United States, 505 U.S. 647, 651-52 (1992). Because
the delay stretched well beyond the minimum needed to trigger the inquiry, this factor weighs heavily
against the State. Zamorano v. State, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).
 
Reason for delay
It appears that Mendez was first scheduled to be tried on November 19, 2001. On
November 16, Mendez’s counsel filed a motion for continuance based on a conflicting trial setting. 
Although no action on the motion is indicated in the record, Mendez was not tried as scheduled. On
April 23, 2002, Mendez filed a motion for speedy trial asking for a prompt trial setting. Two days
later, the State filed a motion for continuance on the ground that it had been unable to locate the
complainant and another witness. The motion was granted and the cause was reset for August 2002. 
A few days before the August trial setting, Mendez’s attorney was allowed to withdraw due to a
conflict of interest and new counsel was appointed. Mendez was not tried as scheduled, but it is
unclear whether the case simply was not reached or if new counsel asked for additional time to
prepare. The next trial setting was January 27, 2003. On that date, the State requested another
continuance, again citing its inability to secure the presence of its witnesses. Defense counsel
responded by filing Mendez’s motion to dismiss for want of a speedy trial. The court granted the
State a further continuance and scheduled a hearing on Mendez’s motion to dismiss for February 20. 
After the motion to dismiss was overruled, Mendez’s first trial began on February 24.
Mendez does not contend that the delay between March 2001, when he was arrested,
and April 2002, when the State was granted its first continuance, was unjustified. This accounts for
over half of the total delay between the time of arrest and the start of the first trial. Of the remaining
ten months, five are attributable to the State’s requested continuances due to the absence of its
witnesses. It has been held that the absence of a witness is a valid reason for delay and should not
be held against the State. Barker, 407 U.S. at 531. The postponement of trial from August 2002 to
January 2003 is attributable, at least in part, to the change in defense counsel. Thus, most of the
delay in Mendez’s trial is either unchallenged or justifiable. This weighs against a finding of a
constitutional violation.
 
Assertion of right
Mendez asserted his right to a speedy trial in April 2002, and reasserted it in January
2003. This weighs in his favor. Zamorano, 84 S.W.3d at 651-52.
Prejudice
The speedy trial act serves to prevent oppressive pretrial incarceration, minimize
anxiety resulting from the pending charges, and limit the possible impairment of the defense. 
Barker, 407 U.S. at 532. Although Mendez was continuously incarcerated following his arrest, it
was undisputed below that he was also being held on a parole revocation warrant and thus would
have been in custody in any case. Mendez offered no evidence of actual prejudice to the defense
resulting from the delay of his trial. In his brief, he asserts that anxiety and prejudice should be
inferred merely from the fact of the delay. See Zamorano, 84 S.W.3d at 654. On this record, the
prejudice prong affords Mendez slight support at best. 
 
Balancing
Two of the factors—the length of delay and the assertion of right—weigh in
Mendez’s favor. One factor—reason for the delay—weighs against a finding of a constitutional
violation. The remaining factor—prejudice—is essentially neutral on this record. In light of the
justification for most of the delay, we conclude that, on balance, Mendez’s constitutional speedy trial
right was not violated. Point of error four is overruled.
 
Double Jeopardy
The first trial of this cause ended in a mistrial on Mendez’s motion. In points of error
two and three, Mendez urges that double jeopardy principles barred his retrial. See U.S. Const.
amends. V, XIV; Tex. Const. art. I, § 14. Under the Fifth Amendment, a defendant who successfully
moves for a mistrial cannot be retried if the mistrial motion was prompted by prosecutorial conduct
“intended to ‘goad’ the defendant into moving for a mistrial.” Oregon v. Kennedy, 456 U.S. 667,
676 (1982). Under the Texas Constitution, retrial is also barred if the prosecutor “was aware [of]
but consciously disregarded the risk that an objectionable event for which he was responsible would
require a mistrial at the defendant’s request.” Bauder v. State, 921 S.W.2d 696 (Tex. Crim. App.
1996).
Trial and appellate courts analyzing a double jeopardy mistrial claim must make a
three-part analysis: (1) was the mistrial provoked by manifestly improper prosecutorial misconduct,
(2) was the prejudice resulting from the misconduct incurable, and (3) did the prosecutor engage in
the misconduct with the intent to goad the defendant into requesting a mistrial (Kennedy) or with a
conscious disregard for a substantial risk that a mistrial would be required (Bauder). Ex parte
Peterson, 117 S.W.3d 804, 816-17 (Tex. Crim. App. 2003). The burden of proof is on the defendant
to prove his Kennedyi>/Bauder claim by a preponderance of the evidence. Id. at 818. Appellate courts
defer to the trial court’s findings of fact but review de novo those mixed questions of law and fact
that do not depend upon credibility and demeanor. Id. at 819. 
The relevant facts are not disputed. In January 2002, a year before Mendez’s first trial
began, the prosecutor then handling the case sent a letter to the attorney then representing Mendez
notifying him that the State intended to use Mendez’s previous felony convictions to enhance
punishment. See Brooks v. State, 957 S.W.2d 30, 33-34 (Tex. Crim. App. 1997) (required notice of
previous convictions to be used for enhancement need not be given in indictment). A new attorney
was appointed to represent Mendez in August 2002, and new prosecutors were assigned to the case
in January 2003. When trial began in February 2003, both sides voir dired the jury panel on the
range of punishment for an unenhanced second degree felony. Two days later, just before testimony
was to begin, the prosecutors brought the January 2002 letter to the attention of defense counsel and
said that the State would be seeking an enhanced punishment. Defense counsel moved for a mistrial
on the ground that he had been denied an opportunity to question the potential jurors regarding the
higher range of punishment. The motion was granted.
We hold that Mendez did not demonstrate by a preponderance of the evidence that
his mistrial motion was provoked by manifestly improper prosecutorial misconduct. At the hearing
on the motion, the prosecutors informed the court that they had discovered the notice letter only that
morning just before speaking to defense counsel and they pointed out that the State had also failed
to voir dire the jury panel on the higher range of punishment. In short, the record reflects that, like
defense counsel, the prosecutors did not timely discover the notice letter that was in the record and
were not attempting to sandbag the defense. Furthermore, the unfairness to the defense perceived
by the trial court could have been cured short of a mistrial. The court could have simply refused to
submit the enhanced punishment range to the jury, but it was not asked to do so. Finally, there is no
evidence that the jury selection process, the only part of the trial that had been conducted before the
mistrial was declared, had gone badly for the State so as to support an inference that the prosecutors
were deliberately or recklessly courting a mistrial by announcing that they intended to seek an
enhanced punishment. Points of error two and three are overruled.
 
Enhancement Procedure
The State’s only punishment witness was a police officer who identified appellant’s
fingerprints in the penitentiary records introduced by the State to prove Mendez’s two previous
nonsequential felony convictions. After the State rested, defense counsel brought it to the court’s
attention that Mendez had not entered his plea to the enhancement allegations. When the court said,
“We’ll just do it now,” Mendez objected that it was too late and asked the court for a “directed
verdict . . . that this enhancement provision is not applicable.” The objection and motion were
overruled, the State read the enhancement allegations, and Mendez entered his plea of not true before
the jury. The officer’s testimony was not reoffered or stipulated. Mendez now contends that the
evidence properly before the jury does not support the jury’s finding that he had been previously
convicted.
It has long been the rule that the reading of the enhancement allegations and the entry
of the defendant’s plea thereon are mandatory, and that no issue is joined between the State and the
defendant with respect to the defendant’s prior criminal record if this is not done. Turner v. State,
897 S.W.2d 786, 788 (Tex. Crim. App. 1995); Welch v. State, 645 S.W.2d 284, 285 (Tex. Crim.
App. 1983). When, as here, the error is discovered after the State rests at the punishment stage, the
correct procedure is to allow the State to reopen, read the enhancement allegations, take the plea, and
reintroduce or stipulate the previously introduced evidence. Welch, 645 S.W.2d at 285. It is error
to permit the jury to consider enhancement evidence admitted before the entry of the defendant’s
plea. Id.
The State urges that Mendez failed to preserve this matter for review by failing to
object to the officer’s testimony when it was offered. We disagree. Welch makes it clear that an
objection at any point during the penalty stage is sufficient to preserve the error and require the
corrective action prescribed in that opinion. And more recently, the court of criminal appeals has
held that when, as here, the enhancement allegations are not contained in the indictment, the failure
to read them at the start of the penalty stage does not put the defendant on notice that “the
proceedings may have gone amiss” and thus no objection is required at that time. Marshall v. State,
No. PD-2016-04, 2006 Tex. Crim. App. LEXIS 360, at *9 (Tex. Crim. App. Feb. 15, 2006).
The failure to timely read the enhancement allegations and take Mendez’s plea was
brought to the attention of the trial court and the State at a time when it was possible to correct the
error. At that point, the State was obligated to either abandon the enhancement allegations or to
correct the error in the manner prescribed in Welch. Although the State belatedly read the
enhancement allegations and Mendez entered his plea, the State failed to reoffer its evidence as
required by Welch. We hold that Mendez did all that was required to preserve this error for appeal
and that no further objection was necessary.
In Turner, the court held that harmless error analysis was inapplicable to error of the
sort presented here. Turner, 897 S.W.2d at 789. The court has since held, however, that except for
a narrow group of federal constitutional errors, no error is categorically immune to a harmless error
analysis. Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (overruling “any other
decision [that] conflicts with the present opinion”). We therefore turn to the question of whether
Mendez’s substantial rights were affected. See Tex. R. App. P. 44.2(b).
The only evidence that Mendez had been previously convicted was introduced before
he entered his plea to the enhancement allegations. This evidence was not properly before the jury,
and it is clear that the jury’s consideration of this evidence for the purpose of enhancement harmed
Mendez. Welch, 645 S.W.2d at 285. Because there was no properly admitted evidence to support
the enhancement allegations, the jury should have limited its deliberations to the range of
punishment applicable to an unenhanced second degree felony: two to twenty years. See Tex. Pen.
Code Ann. § 12.33 (West 2003). Although the punishment assessed was within that range, we
cannot assume that the jury was uninfluenced by the first degree felony punishment range it was
improperly authorized to apply. We are not satisfied that the jury would have assessed the same
twenty-year punishment had it known that this was the maximum applicable penalty. We therefore
conclude that the error affected a substantial right.
Because the error relates to punishment only, we will reverse and remand for a new
punishment determination. Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 2005). We note
that the error does not have double jeopardy implications and the State may seek an enhanced
punishment upon remand. Welch, 645 S.W.2d at 286; see Bell v. State, 994 S.W.2d 173, 175 (Tex.
Crim. App. 1999). 
The judgment is reversed and the cause is remanded for a new punishment hearing.
 
 
                                                ___________________________________________
                                                Bea Ann Smith, Justice
Before Chief Justice Law, Justices B. A. Smith and Pemberton
Reversed and Remanded
Filed: May 4, 2006
Publish