# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00823-CR

**Christopher Faz, Appellant**

v.

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 0983714, HONORABLE BOB PERKINS, JUDGE PRESIDING

After a jury trial, appellant Christopher Faz was convicted of murder and sentenced to eighteen years in the Texas Department of Criminal Justice—Institutional Division. Tex. Penal Code Ann. § 19.02 (West 1994). In three points of error, Faz challenges the legal and factual sufficiency of the evidence to support his conviction and challenges the omission of a jury instruction at the punishment phase of trial. We will affirm the district-court judgment.

### Factual and Procedural Background

The events of March 25, 1998, that culminated in the murder of Adam Chapa began with a fight between John Paul Vasquez and Froilan Gaspar. While intervening to break up the fight, Carl Chapa, Adam's brother, struck Vasquez. Participants in the fight scattered. Faz's involvement in the chain of events began with a phone call from Vasquez to Faz's friend Eric Machado while Faz and Machado were on their way to an auto parts store after work. According to Faz, Machado said

that Vasquez was loud, saying "stupid things" and being rude so Machado hung up. Vasquez called again while Machado was in the store. Machado left the store without completing his purchase, returned to the car, and told Faz they were going to pick up Vasquez at Vasquez's uncle's house. On the way to pick up Vasquez, Machado and Faz stopped at Machado's house where Faz retrieved a handgun belonging to Machado. On cross-examination, Faz agreed that, although Machado sometimes carried the gun to try to sell it and sometimes for general "protection," on the day in question Machado just asked Faz to get the gun. Machado told him that Vasquez had "been jumped."

The two picked up Vasquez at his uncle's house on East Second Street. As Vasquez got into the backseat, he noticed three men crossing the street. Vasquez stood and stuck his head out the sunroof of the car. He hollered obscenities at the three, who were apparently the men involved in the earlier fight. Vasquez invited them to fight because it was now three on three. Machado started driving off.

As they approached the intersection of Aransas and Second, Vasquez saw a light blue truck being driven by Carl Chapa coming to a stop in front of the Chapa house. Vasquez jumped from the moving car and ran to Carl Chapa's truck. Carl attempted to move away in reverse, but Vasquez began to attack him through the open window. As Carl was fighting with Vasquez, Carl's brothers Adam and Marcos came to his aid and started hitting Vasquez. Adam Chapa was a large man, about six feet six inches tall and weighing three hundred pounds.

According to Faz, he ran back toward the fight to help Vasquez, but upon seeing the size of the Chapa brothers, he ran back to the car and retrieved the gun. Faz took a step or two, then

2

fired in the air. Adam Chapa backed away, raised his hands in the air, and yelled at Faz to put the gun away. Faz yelled back that he would put it away, "if you just tell your homeboys to get off mine, you know, and that'll be it." At some point after the first shot, Machado drove away.

According to Faz, at this point, Vasquez started to run away with Marcos, the third Chapa brother, and Carl Chapa in pursuit. Vasquez attempted to jump a fence enclosing a yard, and either tripped or was pulled at and fell over the fence. The two pursuers also jumped the fence and the fight continued. Faz shot in the air again. Vasquez's two pursuers jumped back over the fence and began running away through an alley. Vasquez also jumped back over the fence and came running toward Faz, yelling at Faz to give him the gun. According to Faz, he told Vasquez, "No, the cops are coming," because he could hear multiple sirens in the area. Faz said he told Vasquez that he could "take care of your business some other time." Vasquez grabbed the gun and Faz ran off. Faz heard shots, saw Adam Chapa falling, and continued running. Vasquez later caught up with him.

According to Carl Chapa, his brother hit Vasquez, Vasquez got up, and looked like he wanted to fight. Vasquez started yelling to "cap the m-f-." At that point, Carl noticed someone wearing a red shirt and cap get out of the car with a gun and shoot a round in the air. Vasquez started running away. According to Carl, he grabbed Adam and they were running, but not in pursuit of Vasquez, who had already run away and had apparently jumped the fence. Vasquez kept yelling, "Cap him." At this point, the man in the red shirt shot in the air again. According to Carl, the man in the red shirt then pointed the gun in Adam's direction and shot. Carl realized that Adam had been hit. Carl said that he never chased Vasquez and never tried to keep him from going over the fence. From the moment the first shot was fired, his attention was on the man in the red shirt with the gun.

3

Marcos Chapa also testified. He saw Adam fighting with the man who was at Carl's truck fighting with Carl. The man fighting with Carl started running and Marcos threw a videocassette tape at him. The person kept running and jumped the fence; Carl and Adam were behind him. Marcos then heard a shot. Neither Carl nor Adam jumped over the fence after Vasquez. They started running away from the fence. After Marcos heard the shot, he ran toward the front door of his mother's house, shouting at her to call the police because a guy had a gun. He saw the second shot; *i.e.*, saw the hand in the air with the gun. He heard his brother Adam yelling that he was unarmed; heard the other guy yelling, "Cap him." He said that the person shooting in the air then lowered his hand and shot at Adam.

Delores Chapa, Adam's mother, was watching television, when Christine, Adam's wife, shouted for her to come stop them, they were fighting. She went on her porch, and heard Carl and Marcos telling Adam to stay down because "he's got a gun." She kept hearing someone in the background hollering, "Cap him." She then saw a man with a cap on raise the gun in the air, shoot one time, and then lower the gun and shoot her son Adam.[1]

After the shooting, Faz and Vasquez ran on foot to the home of Steven Guerrerro, a friend of appellant's whose younger brother, Sammy, let them in. Sammy testified that Faz and Vasquez told him that Vasquez shot someone; Vasquez mimicked firing the gun with his finger. Faz asked for a shirt to change into. When Steven arrived, he drove Faz and Vasquez to the home of Roy

---

[1] Carl, Marcos, and Delores Chapa all testified that the same person who fired in the air then lowered the pistol and shot Adam. However, by convicting Faz as a party and finding that he did not use a deadly weapon, the jury evidently believed that Vasquez was the person who actually pulled the trigger.

Machado, Eric Machado's brother, who was having a birthday party. Roy called the police; appellant voluntarily went to the police station and gave a witness statement.[2]

In general, the witnesses agreed it was fairly dark with some light from a streetlight. There was a great deal of confusion about what Faz, Vasquez, and perhaps Machado were wearing. Several witnesses testified that Vasquez was a known hothead and troublemaker.

**Legal and Factual Sufficiency of the Evidence**

In his first two points of error, Faz challenges the legal and factual sufficiency of the evidence to support his conviction as a party to the offense of murder. The charge submitted allowed Faz to be convicted as a party or as a principal. At the outset we note that the verdict form created some confusion for the jury; in fact, they sent a note to the judge telling him they wanted to convict Faz as a party but were not sure how to fill out the form. They found Faz guilty; then "further" found him guilty as a party and found that he did *not* use a deadly weapon, but knew that one would be used. Based on this verdict, we conclude that the jury found Faz guilty as a party, but did not believe that the evidence established beyond a reasonable doubt that Faz actually pulled the trigger. Accordingly, in our analysis of the sufficiency of the evidence, we will not rely on testimony that, if believed, would have been sufficient to convict Faz as a principal. However, that the jury did not believe beyond a reasonable doubt that Faz was the shooter does not mean that the jury accepted all of Faz's version of events.

---

[2] Faz was not arrested at the time. Hector Reveles, the detective on the scene who accompanied Faz, testified that he did not consider Faz either a principal or party to the offense. The case was later presented to a grand jury, which indicted Faz. Vasquez fled town the day after the murder. He was later arrested in San Antonio and tried and convicted separately.

5

*Legal Sufficiency*

When the court reviews the legal sufficiency of a verdict, it does so in the light most favorable to the verdict to determine whether a rational finder of fact could have found all the elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and if the factfinder believes the evidence, the reviewing court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *See Jones*, 944 S.W.2d at 647; *Moreno*, 755 S.W.2d at 867. The court's duty is not to reweigh the evidence from reading a cold record but to position itself as a final due process safeguard ensuring only the rationality of the factfinder. *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); *Moreno*, 755 S.W.2d at 867.

*Factual Sufficiency*

When the court reviews the factual sufficiency of the evidence, it considers all the evidence in a neutral light and reverses if the verdict is so contrary to the overwhelming weight of the evidence as to be unjust. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). The jury's verdict, however, should still be accorded due deference so that the reviewing court does not, in effect, become the thirteenth juror. *See Clewis*, 922 S.W.2d at 133. The

6

appellate court does not interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of testimony. Unless the record clearly reveals that a different result was appropriate, an appellate court should defer to the jury's determination concerning the weight to give contradictory testimonial evidence because the jurors' resolution of such conflicts often turns on an evaluation of credibility and demeanor by the jury. *See Johnson*, 23 S.W.3d at 8.

### *Law of Parties*

In order to prove Faz guilty as a party to an offense, the State had to prove that the offense was committed and that the defendant, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the person who committed the offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 1994). In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)*; Burdine v. State,* 719 S.W.2d 309, 315 (Tex. Crim. App.1986); *Rivera v. State*, 990 S.W.2d 882, 887-88 (Tex. App.—Austin 1999, pet. ref'd), *cert. denied*, 120 S. Ct. 1191 (2000). The evidence must show that at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose. *Burdine,* 719 S.W.2d at 315. Circumstantial evidence may be used to prove party status. *Ransom*, 920 S.W.2d at 302 (Tex. Crim. App. 1994); *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim. App. 1988); *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); *Rivera*, 990 S.W.2d at 887.

Evidence is sufficient to convict under the law of parties if the defendant is physically present at the commission of the offense and encourages its commission by words or other

agreement. *Ransom,* 920 S.W.2d at 302; *Cordova,* 698 S.W.2d at 111; *Rivera*, 990 S.W.2d at 888. In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App.1991); *Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim. App. 1990).

### Faz's Guilt as a Party

Faz's analysis of the sufficiency of the evidence freeze-frames the action on one moment during the course of events—the transfer of the gun from Faz to Vasquez. If Vasquez *took* the gun away from him, Faz argues, his status is essentially that of a bystander with no criminal culpability. Faz relies on *Scott v. State*, 946 S.W.2d 166, 167 (Tex. App.—Austin 1997, pet. ref'd), in which this Court reversed a conviction as a party to aggravated robbery. However, *Scott* is distinguishable from the current case. In *Scott*, the evidence showed that the defendant was driving a car with several passengers, one of whom had a gun. *Id*. at 168. The defendant was asked to pull over and park behind some apartments while two of the passengers went into a store. The defendant remained in the car listening to music. *Id*. The two passengers returned to the car, got in and told the driver to go. While he was driving away, the others told him that there had been a robbery and shooting and gave defendant one hundred dollars. *Id*. at 168-69. The court instructed the jury that before the jury could find the appellant guilty it must find beyond a reasonable doubt that appellant entered into an agreement and a conspiracy with the codefendants to commit the offense of robbery. This Court held the evidence insufficient to convict Scott as a party under that charge because there

was no evidence that the defendant entered into a conspiracy and agreed to become a party to the robbery by acting as a lookout and driver. *Id*. at 170.

In the current case, the jury was instructed that Faz was criminally responsible as a party if, with the intent of promoting or assisting the commission of the offense, he aided or attempted to aid another person in the commission of the offense. Instructions and definitions on murder and intent were also given. The evidence from which the jury could infer Faz's status as a party was much more extensive than in *Scott*.

Faz argues that, at the time he retrieved the gun, he did not know of the earlier fight involving Vasquez. Therefore, he argues, he could not have formed any intent to harm anyone or assist in harming anyone at the time he retrieved the gun. However, Faz contradicted himself in front of the jury on cross-examination when he said that he knew of the attack on Vasquez at the time and that sometimes he and Machado carried the gun for "protection." By the time he got out of the car with the gun in hand, he knew of the earlier altercation and he had already decided it was unwise to confront the Chapa brothers without the gun. The jury could have concluded that at the time Faz retrieved the gun, he might not have already intended to harm Adam Chapa, but was prepared to use the gun in connection with the attack on Vasquez.

The jury did not have to accept Faz's benign characterization of the other actions he admittedly took; they were free to derive another meaning from the totality of his actions. The actions that the jury had before it to analyze were that Faz ran toward the fight scene, decided that the Chapa brothers were too physically intimidating, went back to the car, retrieved the gun, fired once in the air, then fired a second time. The jury may have believed the version of events given in

9

which Vasquez had already run away, jumped a fence, and eluded any pursuit by the time of the second shot. There was conflicting and confusing testimony about who moved where and when in relationship to each other, but the jury could have interpreted the participants' movements as Faz moving toward Vasquez when Vasquez jumped back over the fence in order to make the gun available to Vasquez. The jury did not have to believe that Faz verbally refused to give Vasquez the gun and Vasquez took it away from him. Further, the jury could have viewed Faz's change in shirts immediately after the event as an attempt to confuse identification.

Finally, we note that both the State and the defense seem to assume that the determinatve factor in the analysis of Faz's status as a party is whether Vasquez *took* the gun out of Faz's hand. However, this Court's precedent undercuts an analysis focused *only* on the transfer of possession of the gun. *Rivera v. State*, 990 S.W.2d 882 (Tex. App.—Austin 1999, pet. ref'd), *cert. denied*, 120 S. Ct. 1191 (2000). In *Rivera*, the defendant and his brother Tito went into a McDonald's. They were described as moving purposefully and directly. *Id*. at 886. Tito carried a rifle, the defendant carried a knife. Tito raised the rifle and pointed it at one of the patrons. The defendant redirected Tito by indicating another group of men. Tito shot the victim. As they left, one man pursued them. The defendant stabbed the pursuer. *Id*. That evidence was held sufficient to convict the defendant as a party. *Id*. at 888. The defendant did not directly supply the weapon in *Rivera*; his identification of the intended victim and other actions allowed the inference that he and Tito were acting with a common purpose. *See also Garcia v. State*, 882 S.W.2d 856, 859-60 (Tex. App.—Corpus Christi 1994, no pet.) (sufficient evidence of complicity when defendant aided gang member by preventing a vehicle passenger from aiding other victims).

10

In the current case, the jury had a variety of evidence before it concerning actions by Faz from which an inference of intent to assist Vasquez in the commission of the offense could have been derived. It was not necessary that Faz actually pull the trigger to be convicted as a party. We hold that legally and factually sufficient evidence supports the verdict and overrule points of error one and two.

**Punishment Phase Instruction**

In point of error three, Faz contends that the court erred in declining to give a jury instruction on "sudden passion." At the punishment phase, a defendant found guilty of murder may raise the mitigating issue whether he acted under the immediate influence of sudden passion arising from an adequate cause. Tex. Penal Code Ann. § 19.02(d) (West 1994). The statute defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1) (West 1994). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § (a)(2). If a defendant proves by a preponderance of the evidence that he acted under the influence of sudden passion, the offense is punished only as a second-degree felony.

Faz produced no evidence of sudden passion. He was in no way threatened or menaced by Adam Chapa or his brothers. He went toward the fight voluntarily, gun in hand, to assist his friend. There is no evidence that any of the Chapas were armed with guns or knives. Although, in Faz's version of events, Vasquez was getting the worst of the fight at the time Faz intervened,

11

there was no evidence that he was in any immediate danger of being beaten to death. Faz testified that he could hear multiple sirens and his advice to run meant he believed that the police would arrive quickly. Further, the jury also had testimony that indicated that although Vasquez had been pulled away from Carl and knocked down, he was back up and seemed ready to fight before running away. The trial court did not err in refusing to give the requested instruction. We overrule the third point of error.

## Conclusion

We have considered and overruled appellant's three points of error. Accordingly, we affirm the district-court judgment of conviction.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones[*]

Affirmed

Filed: February 8, 2001

Do Not Publish

Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).