# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00427-CR

**John Anthony Kerr, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. 3021911, HONORABLE STANTON B. PEMBERTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted John Anthony Kerr of four counts of credit card fraud.  The district court assessed sentence at twelve years in prison.  On appeal, Kerr complains that the court erred by excluding witnesses *sua sponte* and by admitting evidence of an offense rendered extraneous when the State abandoned a count of the indictment.  He contends that the verdict was not supported by legally and factually sufficient evidence.  He also complains that his trial counsel rendered ineffective assistance.  We affirm the judgment.

## BACKGROUND

Appellant worked as a front-desk clerk at a motel in Austin.  His supervisor testified that the duties of a front-desk clerk included taking credit card numbers from guests making reservations and paying for visits.  Appellant's brother's girlfriend or common-law wife, Heather

Huckaby Kerr, worked as a front-desk clerk at a motel across the street from the motel where appellant worked.

Alex Damalas and his family stayed at appellant's motel March 14-16, 2002. According to the motel's records, appellant took the reservation the day before the stay began; computer records show that, for no apparent reason, he reexamined the entry shortly after making it. Damalas used a credit card to pay for his family's stay. On March 20, 2002, Damalas's credit card company contacted him about purchases being made in Austin using his credit card account; he lives in San Antonio and was in Houston at the time. The charges included $6,741.30 from Roger Beasley Mazda and $1,623.75 from Furniture Warehouse. There later was another unauthorized charge on March 22, 2002 for $647.34 at Quality Appliance.

Ed Collie, Roger Beasley Mazda's parts manager, testified that a man ordered a motor and transmission ("the motor") over the telephone. The caller tried more than one credit card before what turned out to be Damalas's card went through. Because the store had to order the motor, the buyer could not take possession that day. By the time the motor came in, police suspected credit card fraud and arranged to be present when the motor was picked up. Police arrested Julian Herbeck, a mechanic, when he tried to pick up the motor in a truck owned by appellant's brother, Milton Kerr; Herbeck testified that he needed the motor for his own car. Milton Kerr had introduced him to a man, later revealed to be Lejean Rogers, who ordered the motor through some connections for a good deal. Herbeck was to pay Rogers $500-$600 for the motor.

Sandra Johnson of Furniture Warehouse testified regarding the two transactions at her store. On March 20, 2002, she took a telephone order for a sofa, recliner and love seat. Although the caller identified himself as Robert Johnson, he used Damalas's credit card. Damalas's

2

card was the second card the caller attempted to use; the first was declined. When the man identifying himself as Robert Johnson called two days later and ordered more furniture (ostensibly for his college-age child), Sandra Johnson became suspicious because the caller hesitated when asked about his address, then gave a different address than before. She charged the sale, but then called the credit card company, which reported that Damalas's card was being used without authorization. She voided the transaction. When some men arrived to pick up the furniture, she told them she needed a signature from the cardholder.

Abigail Jones from Quality Appliance testified that a man identifying himself as Stephen Smith ordered a washer and dryer over the telephone. He paid for it with Damalas's credit card. She identified appellant as one of two men who came to pick up the appliances.

Law enforcement officials also linked appellant to the purchases. In March 2002, Secret Service Agent Blaine Burrell went to what he described as appellant's residence in Austin and found appliance boxes matching the type of appliances that had been purchased using Damalas's credit card. The residents appeared to be moving, and Burrell learned that the lease expired March 31, 2002; he also learned that appellant and his housemates were moving to Bastrop County. On July 25, 2002, Austin detective Andrew Perkel executed a search warrant at the Bastrop County home where appellant was found along with some of the merchandise from these unauthorized purchases. Perkel testified that appellant admitted knowing of the unauthorized purchases.

There was testimony regarding other unauthorized charges made with credit cards of other former guests at the motel where appellant worked and the motel where Heather Kerr worked. Appliances matching the description of those purchased through these unauthorized transactions were found at appellant's home, which he shared with Milton Kerr and Heather Kerr. Appellant also

3

admitted to police that he knew Rogers, the man who ordered the motor for Herbeck. Police determined that Rogers was one of the men who picked up the appliances.

**DISCUSSION**

Appellant raises four points of error on appeal. He complains that the district court erred by excluding witnesses *sua sponte* and by admitting evidence of an offense rendered extraneous when the State abandoned a count of the indictment. He contends that the verdict was not supported by legally and factually sufficient evidence. He also asserts that his trial counsel rendered ineffective assistance.

By his first point of error, appellant complains that the district court *sua sponte* excluded witnesses Heather Kerr and Milton Kerr because they were expected to invoke their right not to incriminate themselves. Both witnesses were subpoenaed and present, but did not testify. After placing Heather Kerr under oath, the following exchange occurred among appellant's trial attorney Thomas Prichard, assistant district attorney Duke Hildreth, and the court:

THE COURT: Now, what's your request regarding Heather Kerr?

MR PRICHARD: . . . she tells me that her attorney is Kyle Collins—

THE COURT: Yes.

MR. PRICHARD: —and I've asked her—she said that she had two numbers for him and I asked her to give him a call so . . .

THE COURT: Well, as a practical matter, is she even going to be reached until the morning?

MR. PRICHARD: I'm not sure.

4

THE COURT: I can't imagine with all the people in the call. But, anyhow, we need—we need—she needs to call her attorney before she testifies if she has one.

MR. PRICHARD: She does.

* * *

MR. HILDRETH: Judge, and I'm sure the Court is aware on the information on her stating her name, if she has charges pending and it is very important that she be advised of her rights because I don't want to go through this hoop if she's going to invoke the 5th.

THE COURT: Well, I don't have a comment on that. She has a lawyer, and she ought to use her lawyer. But, in any event, you're here by subpoena, and you need to advise him you've been subpoenaed. And that Mr. Prichard—if your lawyer wants to talk to Mr. Prichard—do you have a number he can [c]all you on or something, Mr. Prichard?

MR. PRICHARD: Well, I want to make it clear to the Court and to Mr. Hildreth that I know that she has charges pending, I know that she has an attorney. I have not attempted to talk to her.

The court then advised Heather Kerr to contact her attorney and to return the next morning. A similar, but much briefer, exchange occurred later that same day regarding appellant's intent to call Milton Kerr. Appellant's attorney advised the court that he intended to call Milton Kerr the next morning and said, "I'm assuming we need to get his lawyer."

The next morning, the court remarked to Prichard that two lawyers were looking for him. Prichard stated that several witnesses had been subpoenaed and were present, that attorney Collins was present, and that Prichard had spoken with appellant. After the jury entered the courtroom, the defense rested without calling any witnesses.

5

In order to preserve error concerning the exclusion of evidence, a party must offer the evidence, have the court exclude it, and inform the court of the nature of the evidence to be excluded. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a); *Love v. State*, 861 S.W.2d 899, 900-01 (Tex. Crim. App. 1993); *see also Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd). The record contains none of these events. At most, the record shows that the court strongly encouraged appellant's attorney not to call the witnesses without their attorneys present. When the attorneys apparently were present, appellant chose not to call the witnesses. Appellant did not call the witnesses, the court did not exclude them, and appellant did not make an offer of proof of what their testimony might have been. He did not preserve error. We overrule point of error one.

By his third point of error, appellant complains that the court abused its discretion by admitting evidence of an offense that had formed the basis of an abandoned count of the indictment. He complains that the court should not have admitted evidence of the unauthorized use of a credit card other than Damalas's card, even for the limited purpose of showing a common plan or scheme. To preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000). Appellant did not object until some time after the admission of evidence of a purchase order and testimony relating to an abandoned count in the indictment. This untimely objection did not preserve error. *See Norris v. State*, 902 S.W.2d 428, 439, 442 (Tex. Crim. App. 1995); *see also Hitt*, 53 S.W.3d at 707-08. We overrule point of error three.

By point of error two, appellant contends that the evidence was legally and factually insufficient to support the verdict. He complains that he had nothing to do with the purchase of the

motor and that no evidence identifies him as the person who ordered or picked up the furniture or appliances. He contends that no evidence directly links him to the charges for which he was convicted. He asserts that he is linked to the use of Damalas's credit card only by virtue of his employment at the motel when the number was appropriated, and linked to the purchased goods only by being present at the home when police executed the search warrant. He argues that the evidence is too weak and that there are reasonable alternative hypotheses for commission of the offenses that do not involve him.

When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the judgment. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

A person commits the offense of credit card abuse if "with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that: (A) the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder . . . ." Tex. Pen. Code Ann. § 32.31(a)(1) (West Supp. 2004-05). The jury charge

7

included an instruction on the law of parties, which holds a defendant criminally responsible for acts in which he is not the primary actor. *See id*. §§ 7.01-.02 (West 2003); *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996); *Rivera v. State*, 990 S.W.2d 882, 887 (Tex. App.—Austin 1999, pet. ref'd). To establish liability as a party, the State must show that the defendant had the intent to promote or assist the commission of the offense. *Rivera*, 990 S.W.2d at 887. The evidence must reflect that at the time of the offense the parties acted together each doing some part to execute the common design, a design which can be shown by direct or circumstantial evidence. *Id*. at 887-88. Although the court of criminal appeals has rejected the reasonable alternative hypothesis test in legal sufficiency claims, the test can be used in factual sufficiency claims. *Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.); *Harris v. State*, 133 S.W.3d 760, 763-65 (Tex. App.—Texarkana 2004, pet. ref'd); *see also Orona v. State*, 836 S.W.2d 319, 322 n.2 (Tex. App.—Austin 1992, no pet.). Circumstantial evidence, however, need not exclude all reasonable alternative hypotheses. *Roberts v. State*, 9 S.W.3d 460, 464 (Tex. App.—Austin 1999, no pet.).

Viewed in the light most favorable to the verdict, the evidence shows that appellant had access to Damalas's credit card by taking the motel reservation; he also had continued access to the computer system. Appellant was identified as one of the men who picked up appliances purchased with the credit card without Damalas's consent. He knew Rogers, who ordered the motor for Herbeck. Appellant was living at the house where the items matching the description of the unauthorized purchases were discovered pursuant to a search warrant. The common thread through all of the offenses for which he was convicted is the credit card number he was in position to supply. He was charged as a party to the offense. Legally sufficient evidence supports his convictions.

8

Viewed without the prism of the light most favorable to the verdict, the evidence is also factually sufficient to support his convictions for these offenses. The absence of evidence that appellant personally ordered the items does not preclude a finding of guilt based on his role in obtaining Damalas's credit card number. In taking the Damalases' motel reservation, appellant recorded the credit card number used in the unauthorized transactions. Although Heather Kerr worked across the street and occasionally came across the street to visit, there is no evidence that she obtained the credit card number. When police executed the search warrant at the Bastrop County house, appellant told them he knew about the unauthorized purchases. Appellant is the only person who worked in the motel where the Damalases stayed who also lived in the house where many of the items were found. Although Jones was somewhat equivocal in her identification of appellant as one of the persons who picked up furniture, the jury could assess her certainty. Even the purchase of the motor—which was not intended for the Kerr household and never left Roger Beasley Mazda—was made possible by use of the credit card number that circumstantial evidence showed that appellant obtained; the absence of evidence that appellant was more involved in the transaction does not prevent the jury from inferring that appellant participated as a party by providing the credit card used in this unauthorized transaction in order to reap a benefit. We overrule point two.

By point of error four, appellant contends that his counsel provided ineffective assistance. Appellant contends that counsel was ineffective during the guilt-innocence phase by failing to call witnesses other than Herbeck, the mechanic who tried to pick up the motor from Roger Beasley Mazda. He particularly complains of the failure to call Heather Kerr and Milton Kerr. He also asserts that the failure to call any witnesses at the punishment phase constituted deficient

9

performance. He argues that mitigation evidence might have reduced his twelve-year prison sentence toward the lower end of the two-to-twenty-year range. *See Wiggins v. Smith*, 539 U.S. 510, 534-38 (2003) (effective counsel would have investigated and introduced evidence of murderer's bad childhood that might have persuaded jury to opt against death penalty).

To show ineffective assistance, an appellant must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The appellant must show that counsel's performance was deficient—*i.e.*, that counsel made errors so serious that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant also must show that counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. This prejudice is demonstrated when the appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. The same standard of review applies to both the guilt-innocence and the punishment phases of trial. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's conduct fell within the range of reasonable professional assistance. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.); *see Thompson*, 9 S.W.3d at 813. When the record is silent as to possible trial strategies, the appellate court will not speculate as to why counsel acted in a particular way. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). Review of a trial counsel's performance must be highly deferential.

10

*Thompson*, 9 S.W.3d at 813. The appellant bears the burden of overcoming the presumption of reasonable performance and of presenting a record demonstrating that counsel's performance was not based on sound trial strategy. *See Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813. Although a single error or omission by counsel could constitute ineffective assistance, an appellate court looks to the "totality of the representation" in assessing counsel's effectiveness. *Thompson*, 9 S.W.3d at 813. Counsel's effectiveness is assessed from the perspective at trial, not in hindsight. *Strickland*, 466 U.S. at 689; *Mayhue*, 969 S.W.2d at 510. The burden of showing ineffectiveness is difficult if there is no evidentiary hearing on the issue of counsel's effectiveness. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

The record does not show that appellant's trial counsel's performance was deficient. The record shows that trial counsel capably presented pretrial motions, subpoenaed witnesses, cross-examined witnesses, and objected to the admission of evidence. We have only the trial record before us. As set out above in the discussion of point of error one, appellant's counsel subpoenaed Heather Kerr and Milton Kerr, but contacted their counsel because of the expectation that they would invoke their right not to incriminate themselves. Apparently after a discussion with appellant, counsel announced that the defense rested at guilt-innocence without calling either witness. There is nothing in the record to show what the Kerrs' testimony might have been. Likewise, the record is silent regarding what evidence appellant thinks would have mitigated his punishment.

Even if the failures to call witnesses at both phases were so deficient as to render counsel's assistance ineffective, appellant has failed to show that the deficiency harmed him. Without knowing what testimony was not provided at the guilt-innocence phase, we cannot assess

11

whether it would have changed the jury's verdict. Without knowing what mitigation evidence might exist, we cannot speculate on its potential effect at punishment on the district court, which assessed sentence. This case stands in stark contrast to *Wiggins*, in which the record on the petition for the writ of habeas corpus relief was replete with evidence of the murderer's diminished mental capacity and his childhood of privation, abuse, rape, and homelessness that was not fully investigated or introduced by his trial counsel. *See Wiggins*, 539 U.S. at 524-26, 534-38. The record here does not similarly show a reasonable probability that, but for counsel's alleged errors, the results at guilt-innocence or punishment would have been different. We overrule point four.

**CONCLUSION**

Having overruled appellant's complaints about the admission of evidence, the sufficiency of the evidence, and the effectiveness of trial counsel, we affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  March 10, 2005

Do Not Publish

12